IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JTH TAX LLC d/b/a LIBERTY TAX
SERVICE,

          Plaintiff,

v.                                 Case No. 2:21-cv-339

ANDREA CASWELL,

          Defendant.

*MEMORANDUM OPINION AND ORDER*

Before the Court is JTH Tax, LLC d/b/a Liberty Tax Service's ("Plaintiff") Motion for Default Judgment ("Motion" or "Motion for Default Judgment"). Mot. Default J., ECF No. 14. The Court **FINDS** that Plaintiff has provided sufficient evidence to support a finding of default judgment against Andrea Caswell ("Defendant"). Accordingly, Defendant's Motion is **GRANTED**.

### I.    FACTS AND PROCEDURAL HISTORY

Liberty is the franchisor of Liberty Tax Service® income tax preparation service centers located throughout the United States, including the Commonwealth of Virginia. Complaint ("Compl.") ¶ 8. Liberty owns the federally-registered Liberty Tax Service® trademarks, service marks, logos, and derivations thereof (the "Marks") and has spent substantial time and money advertising and promoting the distinctive and well-known Liberty Tax Service® system, which sells income tax preparation and filing services and products to the public under the Marks. Franchisees license the Marks pursuant to franchise agreements. *Id.* ¶ 9. Pursuant to the terms of franchise agreements, Liberty discloses certain confidential information and trade secrets, including Liberty's confidential Operations Manual, methods of operation of franchise, customer

information and records, and marketing information, to franchisees. *Id.* ¶ 10. Liberty has grown to be one of the largest tax preparation franchises in the United States. *Id.* ¶ 11. Liberty plays an important role in the local Norfolk, Virginia economy, as well as nation-wide, with a network of over 21,000 tax preparers. *Id.* ¶ 12. Liberty's busiest time of year are the months of January through April, during which time Liberty generates approximately 90% of its annual revenue. *Id.* ¶ 13.

**Franchise Agreements**

On or about January 7, 2021, Defendant entered into three Franchise Agreements with Liberty for the Territories known as CA236, CA606, and CA885. Compl. ¶ 14, Ex. A–C. Defendant operated the Franchised Businesses from 6000 Sepuleda Blvd., Suite 1151, Culver City, California 90230 (the "CA235 Location"); 4709 South Broadway, Suite A, Los Angeles, California 90037 (the "CA606 Location"); and 306 West Florence Avenue, Los Angeles, California 90003 (the "CA885 Location") (Collectively, the "Franchise Locations"). Compl. ¶ 14.

In exchange for Liberty's grant of the franchises allowing them to "operate a tax return preparation business using Liberty's system and Liberty's Marks within the Territory," and specifically at the Franchise Locations, Defendant agreed to certain obligations while operating under the Franchise Agreements, as well as post-termination. *Id.* ¶ 15. Pursuant to the Franchise Agreements, Liberty provided Defendant with training in franchise operation, marketing, advertising, sales, and business systems. Defendant also received a copy of Liberty's confidential operating, marketing, and advertising materials, which are not available to the public or to anyone who is not part of Liberty's business system. *Id.* ¶ 16. Under the Franchise Agreements, Defendant agreed to pay Liberty certain royalties and fees. Exhibits A-C § 4(d). *Id.* ¶ 17. Pursuant to Section 9(d), Defendant must "[p]ay to Liberty all amounts owing to Liberty, whether related to the Territory or not. If termination is for any default by Franchisee, the sums to be paid to Liberty will

include all damages, costs and expenses, including reasonable attorney's fees incurred by Liberty as a result of the default including any enforcement of Franchisee's post termination obligations." *Id.* ¶ 18.

**Promissory Notes**

Defendant made four promissory notes (collectively, the "Notes") in favor of Liberty that are past due and owing. *Id.* ¶ 19; Ex. D–F. These Notes provide that Liberty will deduct monies that Defendant owes Liberty to apply to upcoming amounts due to Liberty and remit the balance of fees received under Liberty's Automatic Payment Transfer program. *Id.* ¶¶ 21–22, Ex. D–F.

In these Notes, Defendant agreed "to pay all attorneys' fees and other costs and expenses that Liberty may incur in connection with the collection or enforcement of [the Note]." *Id.* These Notes set forth events that constitute default, including "(a) any default in the payment of any installment or payment of principal, interest, or other amounts due and payable under this Note … (c) any default by Obligor in the performance of, or compliance with, any provision in this Note or other agreement, document or instrument to which any Obligor and Liberty are parties . . . ." *Id.* ¶ 23, Ex. D–F. Defendant agreed that "[i]f an event of default shall occur or if the undersigned shall fail to pay this Note in full at maturity, the entire unpaid balance of this Note and all accrued interest shall become immediately due and payable, at the option of Liberty, without notice or demand to any Obligor." *Id.* ¶ 24; Ex. D–F. Defendant agreed that "[t]he signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms. In addition, the signatures of all individuals below in any capacity also constitute their personal joint and several agreement to perform all the obligations in and relating to this Promissory Note." Compl. ¶ 25, Ex. D–F.

Defendant also agreed that each of the promissory notes "shall be construed in all respects and enforced according to the laws of the Commonwealth of Virginia." *Id.* ¶ 26, Ex. D–F. Section 23 of the Franchise Agreements contains a personal guaranty whereby Defendant agreed to abide by the terms therein including, specifically, those pertaining to governing law and forum selection, to make all payments specified in the Franchise Agreements, and to pay any promissory notes and debt owed to Liberty. *Id.* at Ex. D–F.

On January 7, 2021, Defendant executed a promissory note in favor of Liberty in the principal amount of $113,354.32 (the "3146-LI-2101 and 3146-LI-2102 Note"). *Id.* ¶ 28, Ex. D. Pursuant to the 3146-LI-2101 and 3146-LI-2102 Note, upon Defendant's abandonment of the Franchise Agreements, the full amount became due and owing, with an outstanding balance of $29,291.80 and $84,082.52, respectively. *Id.*

On January 7, 2021, Defendant made a promissory note in favor of Liberty in the principal amount of $32,320.00 (the "3146-FR-2101 Note"). *Id.* at Ex. E. Pursuant to the 3146-FR2101 note, upon Defendant's abandonment of the Franchise Agreements, the full amount became due and owing, with an outstanding balance of $32,320.00. Compl. ¶ 29.

On January 27, 2021, Defendant made a promissory note with Metabank National Association ("Metabank"), as a line of credit with a maximum loan amount of $135,217.36 (the "3146-OP-2021-4 Note"). *Id.* ¶ 30–32, Ex. F. Liberty has an agreement with Metabank, where Metabank will provide a line of credit to Liberty Franchisees. *Id.* Under this agreement, Franchisees owe to Liberty amounts owed under their promissory note with Metabank, and Liberty makes the payments on behalf of the franchisee. *Id.* Upon Defendant's abandonment of the Franchise Agreement, Liberty became liable for the amounts owed to Metabank. *Id.* ¶ 33. Pursuant to the Franchise Agreements, upon Defendant's abandonment of the Franchise Agreements, the

full amount became due and owing, with an outstanding balance of $47,142.06. Suppl. Joyner-Reed Aff., ECF No. 34 at 2–6, 10–11.

**Termination of the Franchise Agreements**

On or about April 2, 2021, Liberty terminated the Franchise Agreements, effective immediately, due to Defendant's abandonment of the Franchise Businesses. Compl. ¶¶ 35–37, Ex. G. Pursuant to the Termination, Defendant was reminded that he remained bound by the post-termination covenants of the Franchise Agreements. *Id.* Section 9 of the Franchise Agreements set forth Defendant's post-termination obligations, including, inter alia, the obligation to: assign all phone numbers used in connection with the operation of the Franchised Businesses to Liberty; assign to Liberty interest in any leases; deliver all customer lists, tax returns, files, and records; return Liberty's confidential operations manual; and adhere to the Franchise Agreement's post-termination non-competition and non-solicitation covenants. *Id.*; Ex. A–C.

Plaintiff filed the instant Complaint on June 18, 2021, alleging various breach of contract claims against Defendant. Compl., ECF No. 1. A summons was returned and executed by the Secretary of the Commonwealth of Virginia as to Defendant on September 15, 2021. Summons, ECF No. 9. Plaintiff filed a Request for Entry of Default on October 29, 2021, *see* Req. Entry Default, ECF No. 12, and the Clerk entered default against Defendant on November 1, 2021. Entry Default, ECF No. 13.

Plaintiff moved for default judgment on December 10, 2021. On June 28, 2022, the Court held a hearing on the matter—at which Defendant did not appear—and subsequently ordered that Plaintiff provide additional evidence to support their damages. Order, ECF No. 29. Plaintiff provided additional evidence in support of damages on July 15, 2022. Mem. Supp. Default J., ECF No. 31. The Court ordered that Plaintiff provide further documentation on August 8, 2022. Order,

ECF No. 32. Plaintiff provided further documentation on August 11, 2022. Burns Aff., ECF No. 33; Suppl. Joyner-Reed Aff., ECF No. 34.

## II. LEGAL STANDARD

### A. Default Judgment

Rule 55 of the Federal Rules of Civil Procedure governs entries of default and default judgments. Pursuant to Rule 55(a), the Clerk must enter default against a party that "has failed to plead or otherwise defend" against an action. After the Clerk has entered default, a plaintiff may seek a default judgment against a defendant pursuant to Rule 55(b). The United States Court of Appeals for the Fourth Circuit has expressed "a strong preference that, as a general matter, defaults be avoided, and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010). Default judgment may be appropriate, however, "when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

A court must "exercise sound judicial discretion" when considering whether to enter default judgment, "and the moving party is not entitled to default judgment as a matter of right." *EMI Apr. Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009) (citing *Sentry Select Ins. Co. v. LBL Skysystems (U.S.A.) Inc.*, 486 F. Supp. 2d 496, 502 (E.D. Pa. 2007)). When determining whether to grant a motion for default judgment, courts may consider:

> (1) the amount of money potentially involved; (2) whether material issues of fact or issues of substantial public importance are at issue; (3) whether the default is largely technical; (4) whether plaintiff has been substantially prejudiced by the delay involved; (5) whether the grounds for default are clearly established or are in doubt; (6) how harsh an effect a default judgment might have; and (7) whether the default was caused by a good-faith mistake or by excusable or inexcusable neglect on the part of the defendant.

*Id.* at 506 (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2685 (3d ed. 1998)) (internal quotations omitted).

Although a defaulting party admits the factual allegations in the filings of the opposing party, a court must evaluate the sufficiency of the allegations to determine if the party moving for default judgment states a cause of action. *See GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n. 3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."); *see also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The court must . . . determine whether the well-pleaded allegations in [the] complaint support the relief sought in th[e] action."); *Anderson v. Found, for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998) (holding that the district court erred in granting default judgment to a party where the party failed to state a valid claim).

## B. Damages

If a court determines that the well-pleaded allegations in the complaint support relief in the form of damages, the court must establish the damages to which the plaintiff is entitled. *See J & J Sports Prods., Inc. v. Brutt's LLC*, No. 2:14CV269, 2014 WL 7363823, at *7 (E.D. Va. Dec. 23, 2014). Allegations relating to the amount of damages are not deemed admitted by default. FED. R. CIV. P. 8(b)(6). Unless the amount of damages is certain, the Court is required to make an independent determination of the sum to be awarded. In all circumstances, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c); *see also In re Genesys Data Technologies, Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). Thus, even if the court determines that a plaintiff has established liability, the court does not accept as true factual allegations regarding damages, but rather must make an independent determination

7

regarding damages. *J & J Sports Productions, Inc., v. Panana, LLC*, 2014 WL 5454323, at *1 (D. Md. Oct. 24, 2014). In determining the appropriate sum, the court may rely on affidavits or documentary evidence in the record. *Id.*

### III. DISCUSSION

#### A. Default Judgment

The Court finds that the well-pled allegations in the Complaint support relief for breach of contract, and Defendant is liable to Plaintiff for damages, attorney's fees, and post-judgment interest. To succeed on a breach of contract claim at trial under Virginia[1] law, a plaintiff must establish the following elements: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation. *See Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 154 (2009); *see also Filak v. George*, 267 Va. 612, 619 (2004). The well-pled facts in the Complaint establish that Defendant executed multiple, valid, and enforceable franchise agreements and promissory notes with Plaintiff, failed to fulfill their obligations under those contracts, and caused damage to Plaintiff as a result of their breach.

Furthermore, all the default judgment factors favor relief. *See EMI Apr.*, 618 F. Supp. 2d at 506. First, the amount of money involved is certainly not nominal, but it is unlikely to "shock the conscience if it were entered by default judgment," especially given that the amount requested is largely predicted by the plain text of the agreements Plaintiff entered into with Defendant. *Id.* Second, this matter is ultimately a private contractual dispute and does not appear to involve material issues of fact or issues of substantial public importance. Third, default here is a result of Defendant's complete abandonment of its obligations under its agreements with Plaintiff and is

---

[1] State law governs contractual matters. *James v. Circuit City Stores, Inc.*, 370 F.3d 417, 421-22 (4th Cir. 2004).

not the result of a mere technically, such as missing a deadline by a few days. *Id.* at 505. Fourth, Plaintiff has been significantly prejudiced by the delay involved, having had to navigate Defendant's breach since early 2021 without any relief. Fifth, the grounds for default here are clearly established by the factual and procedural history. Sixth, while the damages that would result from a default judgment in this case are significant, the effect of the judgment is not harsh considering: (1) the damages amount is largely predicted by the plain text of the agreements Plaintiff entered into with Defendant; and (2) Plaintiff incurred significant costs and liability in executing the franchise agreements and promissory notes, then shortly thereafter having to terminate the agreements and/or fulfill their liabilities under the notes. And finally, there is no indication that Defendant's good-faith mistake or excusable neglect caused Defendant's default.

**B.    Damages**

Defendant is liable to Plaintiff for $344,189.80 in damages. The Court will address the appropriate damages for each count in turn.

i.    Breach of the Promissory Notes

Plaintiff is owed $196,667.15 on Count One as of April 7, 2021, the latest date on which Plaintiff is requesting damages. *See* Compl. at Ex. D–F; Suppl. Aff. of Heather Joyner-Reed, ECF No. 34 at 2–6, 10–11; Suppl. Mem. Supp., ECF No. 31 at Ex. 1. The Court's calculation is below.

> Notes 1 and 2 (8% per annum): $113,354.32 + $2,267.09 in interest = $115, 621.41
> Note 3 (12% per annum): $32,320.00 + $1,583.68 in interest = $33,903.68
> Note 4 (N/A): $47,142.06
>
> TOTAL ($115, 621.41 + $33,903.68 + $47,142.06) = $196,667.15

ii.    Breach of the Franchise Agreements (Accounts Receivable)

The Court finds that Plaintiff is owed $9,522.65 on Count Two as of April 7, 2021, the latest date on which Plaintiff is requesting damages. *See* Compl. at Ex. G; Suppl. Aff. of Heather Joyner-Reed, ECF No. 34 at 5, 9; Suppl. Mem. Supp., ECF No. 31 at Ex. 2.

iii. <u>Breach of the Franchise Agreements (Future Profits)</u>

The Court finds that Plaintiff is owed $138,000 in future profits across all territories on Count III ($46,000 X 3 territories = $138,000), if all agreements were carried out to completion. *See* Compl. at Ex. A–C; Suppl. Mem. Supp., ECF No. 31 at Ex. 3.

Therefore, based on the calculations above, Defendant is liable to Plaintiff for a total of $344,189.80 in damages, plus attorney's fees and post-judgment interest (discussed below).

C. **Attorney's Fees and Costs**

"In Virginia, counsel must 'establish, as an element of the attorney's prima facie case, that the fees charged . . . are reasonable.'" *Peter Farrell Supercars, Inc. v. Monsen*, 82 F. App'x 293, 300 (4th Cir. 2003) (quoting *Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven Ltd.*, 253 Va. 93, 480 S.E. 2d 471, 473 (Va. 1997)). "'[T]he fact finder should consider such circumstances as the time consumed, the effort expended, the nature of the services rendered, and other attending circumstances." *Mullins v. Richlands Nat'l Bank*, 241 Va. 447, 403 S.E. 2d 334, 335, 7 Va. Law Rep. 2282 (Va. 1991). While expert testimony regarding the reasonableness of the fees is not required in every case, *see Tazewell Oil Co. v. United Va. Bank*, 243 Va. 94, 413 S.E. 2d 611 (Va. 1992) (holding affidavit and billing records sufficient), the Court can request expert testimony to better inform its review of Plaintiff's requested damages.

In this case, Plaintiff initially failed to state an amount of requested attorney's fees and costs, despite requesting attorney's fees and costs generally in their Motion for Default Judgment.

10

Mem. Supp. at 8. After multiple requests by the Court to submit supporting documentation, including an affidavit of reasonableness from independent counsel, Plaintiff provided the Court with billing records and an affidavit from counsel assigned in this case. The Court has reviewed the billing records and finds that the requested fees of $19,889.35 are reasonable. There is no documentation, however, to support counsel's request for costs. And the Court is unwilling to award unsupported costs in this case given that it is a matter of default judgment, in which Plaintiff only had to make one brief court appearance and none of the costliest aspects of litigation, such as discovery and dispositive motions occurred. Accordingly, Defendant is only liable to Plaintiff for $19,889.35 in attorney's fees.

### D. Pre-Judgment Interest

Plaintiff moves for an entry of pre-judgment interest in addition to the requested damages. *See* Pl.'s Mem. Supp. at 8; Pl.'s Suppl. Mem. Supp. at 3. The district court has discretion on whether to award pre-judgment interest. *Maksymchuk v. Frank*, 987 F.2d 1072, 1077 (4th Cir. 1993). "District courts must weigh the equities in a particular case to determine whether an award of prejudgment interest is appropriate." *Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717, 727 (4th Cir. 2000) (citing *McDevitt & Street Co. v. Marriott Corp.*, 754 F.Supp. 513, 515 (E.D. Va. 1991)). "Prejudgment interest is commonly denied when the back pay award is not readily determinable or when the plaintiff fails to raise the issue in a timely or an appropriate manner." *Maksymchuk*, 987 F.2d at 1077.

The Court finds an award of pre-judgment interest is not appropriate in this case because Plaintiff did not clearly specify the requested damages and the calculation thereof when they first moved for default judgment. As detailed in the factual and procedural history, on multiple occasions, the Court had to order Plaintiff to provide additional information to support their

11

damages or otherwise clarify inconsistencies in their pleadings. Prior to issuing each order, the Court needed to evaluate incomplete and conflicting documentation in order to discern whether the documentation Plaintiff provided was sufficient to support default judgment. And even then, the Court still had to make an independent determination regarding attorney's fees and costs. *See J & J Sports*, 2014 WL 5454323, at *1. For these reasons, the Court finds it inappropriate to award pre-judgment interest in this case. *See Maksymchuk*, 987 F.2d at 1077.

E.   **Post-Judgment Interest**

Plaintiff also moves for an entry of post-judgment interest in addition to the requested damages. *See* Pl.'s Mem. Supp. at 8; at Pl.'s Suppl. Mem. Supp. at 3. Under the post-judgment statute, post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961 (2000). Section 1961 provides further that "[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *Id.* The Supreme Court held that "[t]he purpose of post-judgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835–36 (1990) (internal quotations and citation omitted). The Fourth Circuit has held that "awarding post-judgment interest on the entire [damages] amount . . . including pre-judgment interest, most closely comports with the purpose of post-judgment interest articulated by the Supreme Court." *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1031 (4th Cir. 1993) (citing *Bonjorno*, 494 U.S. at 835). Further, post-judgment interest on a money judgment begins to accrue "from the date the judgment is entered until payment is made in full at the federal rate of

interest as calculated using the formula set forth in 28 U.S.C. § 1961." *Brinn v. Tidewater Transp. Dist. Comm'n*, 113 F.Supp.2d 935, 939 (E.D. Va. 2000) (citing *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999)).

The Court finds that Plaintiff is entitled to post-judgment interest, calculated in the manner set forth in 28 U.S.C. § 1961(a), "to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Bonjorno*, 494 U.S. at 835–36 (internal quotations and citation omitted).

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Default Judgement is **GRANTED**. The Court **ENTERS** default judgment against Defendant for Counts One through Three of the Verified Complaint. Plaintiff is **AWARDED** $344,189.80 in damages to be recovered from Defendant. Moreover, Plaintiff's request for pre-judgment interest is **DENIED** and the request for post-judgment interest is **GRANTED**. And finally, Plaintiff's request for reasonable attorney's fees is **GRANTED** in the amount of $19,889.35.

Defendant is **ORDERED** to pay Plaintiff a final judgment of **$364,079.15** within **SIXTY (60) DAYS** of the date of this Order. Post-judgment interest shall be paid at the prevailing interest rate calculated from the date of the entry of this Order. The Court shall retain jurisdiction for enforcement of its Order. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and all parties of record.

**IT IS SO ORDERED.**

Norfolk, Virginia
August /s/ , 2022

Raymond A. Jackson
United States District Judge